### In re Kent D. HULL, Debtor.

**Lenard Moen; Moen Industries, Inc., Appellants,**

v.

**Kent D. Hull; Daniel H. Brunner, Chapter 13 Trustee, Appellees.**

BAP No. EW–99–1265–BPK.
Bankruptcy No. 94–03281–K13.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 21, 2000.

Decided July 20, 2000.

---

728

Michael L. Loft, Loft, White & Mount, Spokane, WA, for Leonard Moen and Moen Industries, Inc.

John F. Bury, Murphy, Bantz and Bury, Spokane, WA, for Kent D. Hull.

Before BRANDT, PERRIS, and KLEIN, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

This appeal presents the puzzle of how the income of a non-debtor spouse in a community property state is to be considered on confirmation of the debtor's chapter 13 [1] plan. We conclude that, on the record before us, and under Washington community property law, the debtor's interest in that income was improperly excluded. We reverse and remand.

## I. FACTS

Appellant Lenard E. Moen is the owner of appellant Moen Industries, Inc. (jointly, "Moen"), which manufactures packaging machines. Appellee/debtor Kent Hull ("Hull") was the president, a director, the sole shareholder, and an employee of Hullpak Manufacturing, Inc. ("Hullpak"), which was in the same business.

On 29 December 1994, Hull filed an individual petition for chapter 13 relief, a few weeks before trial in U.S. District Court to determine damages on Moen's patent infringement claim in litigation commenced in 1992. Hullpak's liability had already been determined and affirmed on appeal, and a preliminary injunction had issued based on allegations of lost profit damages exceeding $300,000. Hull, but not his marital community, had recently been added as a defendant. About the same time, Hullpak also filed a bankruptcy petition under chapter 7.

At the time of the bankruptcy filing, Kent and Linda Hull had been married for approximately four years and were residents of the State of Washington. Hull earned net income of $3,060 per month as a self-employed consultant. Linda Hull was an attorney with net income of $3,975 ($8,333 gross) per month. They resided together on 22.5 acres in Colbert, Washington. She was also a director of Hullpak in 1992 and 1993 and a landlord of Hullpak in 1993; neither she nor the marital community had been named as defendants in the infringement action. Within a few months after Hull filed his bankruptcy petition, Linda Hull became a "solo lobbyist," earning more than $20,000 net per month. This work required her to maintain quarters in the state capital, some 300 miles from Colbert, four or five months per year.

Hull's first chapter 13 plan called for an early lump-sum payment of $20,000, plus payments of $1,748 per month for 36 months. Moen would receive about $44,360, less trustee fees.

Hull amended his plan to reduce the monthly payments to $1,551, but increase the total payment to Moen by about $1,000. The amended plan stated that the debt was Hull's separate obligation. Moen filed a timely proof of claim for $1,374,708 on a "community" debt; no objections were filed to that claim.

About five months after the case was filed, the bankruptcy court granted Moen's motion to dismiss, concluding that Hull was ineligible for chapter 13 relief because his liquidated debts exceeded the limit prescribed by § 109(e). The order dismissing was entered on 24 July 1995. On the same day (the record does not disclose the sequence of events), the Hulls had their signatures notarized on an Antenuptial Agreement (the "Agreement"), which provided, in part, that their respective incomes would be converted to separate property. On 26 July 1995, the dismissal was stayed pending appeal.

---

1. Absent contrary indication, all chapter and section references are to the Bankruptcy Code, 11 U.S.C., and all "Rule" references are to the Federal Rules of Bankruptcy Procedure. "RCW" references are to the Revised Code of Washington.

The U.S. District Court ultimately vacated the dismissal and remanded for determination of whether the Moen debt was liquidated on the petition date. In August 1996, the bankruptcy court reversed itself and ruled that the Moen debt was unliquidated as of the petition date, and that Hull was therefore eligible for Chapter 13 relief.

Following discovery, the bankruptcy court held a contested confirmation hearing in July 1998. Without referencing the Agreement, the court ruled that it lacked jurisdiction over Linda Hull's earnings, and concluded "that each of the spouses should be expected to contribute a share of the household expenses equal to their [sic] proportionate net income." Letter Opinion, 28 September 1998 ("Letter Opinion") at 7. According to this formula, apparently fashioned sua sponte by the court, Linda Hull's income would cover approximately 87% of the household expenses, and Hull's, 13%. The bankruptcy court also found that the requirement of "good faith" had been satisfied, but declined to confirm unless various technical deficiencies were corrected in a new plan.

Hull filed a second amended plan in October 1998, which the bankruptcy court confirmed over Moen's objections in April 1999, without explicit findings of fact and conclusions of law. Moen appealed, challenging Hull's eligibility for chapter 13 relief and confirmation.

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(L), and we do under 28 U.S.C. § 158(c).

## III. ISSUES

A. Whether the debtor was eligible for chapter 13 relief;

B. Whether the bankruptcy court correctly excluded the non-debtor spouse's income in calculating the debtor's projected disposable income.

The parties have raised other issues, the dispositions of which do not warrant publication under 9th Cir. BAP Rule 8013–1; we address those issues in a companion memorandum.

## IV. STANDARDS OF REVIEW

■ We review the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1110 (9th Cir.1998). Chapter 13 plan confirmation issues requiring only statutory interpretation are reviewed de novo. *United California Sav. Bank v. Martin (In re Martin)*, 156 B.R. 47, 49 (9th Cir. BAP 1993). Interpretations of state law are also reviewed de novo. *Steinberg v. Crossland Mortgage Corp. (In re Park at Dash Point, L.P.)*, 985 F.2d 1008, 1010 (9th Cir.1993).

■ A bankruptcy court's determination of the amount of debt included in the eligibility calculation is a finding of fact, reviewed for clear error. *Henrichsen v. Scovis (In re Scovis)*, 231 B.R. 336, 339 (9th Cir. BAP 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

■ When the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule, there is a mixed question of law and fact. We review mixed questions de novo. *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir.1997); *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 730 (9th Cir. BAP 1999).

## V. DISCUSSION

### A. *Eligibility*

■ An order confirming a chapter 13 plan implicitly determines eligibility. *See*

*FDIC v. Wenberg (In re Wenberg)*, 94 B.R. 631, 636 (9th Cir. BAP 1988), *aff'd*, 902 F.2d 768 (9th Cir.1990). The bankruptcy court's eligibility determination became final upon entry of the confirmation order, and is properly before the Panel. *See United Phosphorus Ltd. v. Fox (In re Fox)*, 241 B.R. 224, 229 (10th Cir. BAP 1999).

■ The bankruptcy court concluded that Moen's debt was not readily ascertainable, thus not liquidated on the petition date, and found Hull was eligible for chapter 13 relief under § 109(e). The confirmation order implicitly adopted that finding: "The Second Amended Chapter 13 Plan filed with the court on October 28, 1998 meets the requirements of 11 U.S.C. § 1325."

As there was evidence in the record to support the finding that a trial on the merits would be necessary to liquidate the Moen claim, the eligibility determination was not clearly erroneous.

## B. *Confirmation*

### 1. *Procedural Issues*

■ A confirmation hearing is a "contested matter" under Rule 9014, and therefore FRCP 52, incorporated by Rule 7052, applies, requiring separate findings of fact and conclusions of law in support of the confirmation order. *See 550 West Ina Road Trust v. Tucker (In re Tucker)*, 989 F.2d 328, 330 (9th Cir.1993) (the bankruptcy court must make findings of fact in resolving objections to confirmations of chapter 13 plans). The findings of 6 August 1996 on eligibility and those of the Letter Opinion predate the confirmation of the second amended plan. The confirmation order did not explicitly adopt them.

The parties assume that the bankruptcy court intended its Letter Opinion's findings to apply to the second amended plan, to the extent the latter plan conformed to the Letter Opinion. While this is procedurally incorrect, it appears the bankruptcy judge did so intend: there are relatively few differences between the amended plan and the second amended plan, which corrected the identified deficiencies, added a statutorily-allowed provision for attorney's fees, and extended the length of the plan to 60 months.

■ Although we could remand for explicit findings, the age of this case counsels otherwise, and we have discretion to review when the record is sufficient for us to determine the relevant facts, as here. *Gardenhire v. Internal Revenue Service (In re Gardenhire)*, 220 B.R. 376, 380 (9th Cir. BAP 1998), *rev'd on other grounds*, 209 F.3d 1145 (9th Cir.2000).

### 2. *Income of the Non–Filing Spouse: "Disposable Income"?*

■ Can Linda Hull's $242,000 annual income be ignored in determining Hull's projected disposable income? This is a mixed question of law and fact: the only issues in dispute relate to the application of bankruptcy and community property law to the facts.

Section 1322(a)(1) requires that the plan "provide for the submission of all or such portion of future earnings *or other future income* of the debtor ... as is necessary for the execution of the plan." (emphasis added). Section 1325(b)(1)(B) states:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan ... the plan provides that **all of the debtor's projected disposable income** to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan. (emphasis added)

The undisputed facts are that, at the time of confirmation, Hull earned $3,060 net per month as a self-employed consultant, he applied most of it to his plan, and Linda Hull had net earnings (according to the second amended plan) of $20,166 per

month. Linda Hull testified that she expected her income to be the same in 1996 and 1997.

Moen argues that the practical effect, of excluding the non-filing spouse's income is that the marital community receives a windfall when that spouse's income is left outside the disposable income analysis. He further argues that since § 524(a)(3) immunizes the after-acquired community property against a community claim, the lower-paid spouse has incentive to file and thus obtain immunity, while the higher-paid spouse's income is shielded.

The Code defines "disposable income" as "income which is received by [an individual] debtor and which is not reasonably necessary to be expended—for the maintenance or support of the debtor or a dependent of the debtor." § 1325(b)(2)(A). In discussing projected disposable income, the bankruptcy judge noted, "insofar as earnings from post-petition services are concerned, the clear language of [§ 1306(a)(2)] encompasses services performed by the debtor and does not encompass services performed by the debtor's spouse." The bankruptcy court concluded that it had no jurisdiction over Linda Hull's income, and that it could not consider it as part of Hull's disposable income, because her income was not "property of the estate." Letter Opinion, at 5.

■■■■ The characterization of Linda Hull's income as property of the estate or not has no impact on the disposable income analysis here. "Projected disposable income" is not confined to "property of the estate." For example, we have held exempt income must be considered in determining projected disposable income. *Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 796–98 (9th Cir. BAP 1995); *see also Freeman v. Schulman (In re Freeman)*, 86 F.3d 478, 480–81 (6th Cir.1996) and *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1288–89 (8th Cir.1997).

We need not address property of the estate further; rather we focus on the impact of Washington community property law on the disposable income analysis.

### a. Community Property, Generally

The central issue is: what was Hull's projected disposable income (for the duration of the plan) at the time of confirmation? *See Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 358 (9th Cir.1994). The legal question raised is whether Hull's community property interest in the income of his non-debtor spouse is part of Hull's "disposable income."

■■■■ The context in which we consider the issue, as set forth by the preeminent authority on Washington community property:

> Washington's present community property regime ... provide[s] that property and pecuniary rights owned by each spouse at the time of marriage, any property thereafter acquired lucratively (i.e. by gift, succession, inheritance or other non valuable means), and the rents, issues, and profits therefrom constitute separate property. All property acquired after marriage that is not separate property is community property.
>
> . . .
>
> One rather constant theme is the solicitude with which the Washington court has viewed the community property position, manifested in various rules and presumptions: acquisitions by a spouse are presumptively community property; separate property commingled with community property becomes community property by operation of law; obligations incurred by a spouse are presumptively community in character; separate property agreements between spouses must be established by a higher standard of proof than that required to establish community property agreements, and so forth.

Harry M. Cross, *The Community Property Law in Washington*, 61 Wash.L.Rev. 13, 18–19 (1986) (hereafter *"Cross"*) (footnotes and citations omitted).

■ Professor Cross, explicating further:

> [T]he basic presumption that an asset acquired during marriage is community property and, if the transaction indicates a valuable consideration was paid, the presumption can be overcome only by clear and convincing proof that the transaction falls within the scope of a separate property section.

*Cross*, 61 Wash.L.Rev. at 28 (footnotes omitted).

■ These principles have implications for our present task, for, as the Supreme Court noted:

> [I]t must suffice to say that it is clear the wife has, in Washington, a vested property right in the community property, equal with that of her husband; and in the income of the community, including salaries or wages of either husband or wife, or both. . . . The taxpayer contends that if the test of taxability . . . is ownership, it is clear that income of community property is owne[d] by the community and that husband and wife have each a present vested one-half interest therein.

*Poe v. Seaborn*, 282 U.S. 101, 111, 51 S.Ct. 58, 75 L.Ed. 239 (1930). The wife's income is also community property, as the Washington Supreme Court held in *Colagrossi v. Hendrickson*, 50 Wash.2d 266, 271–72, 310 P.2d 1072 (1957). *See also Marriage of Hurd*, 69 Wash.App. 38, 45, 848 P.2d 185 (1993), *rev. denied*, 122 Wash.2d 1020, 863 P.2d 1353 (1993) ("Earnings arising from services performed during marriage are community property.")

■ Thus, apart from some exception to Washington's general rule, Linda Hull's earnings would presumptively be community property. Hull had a present undivided one-half interest in any community property, *see Potlatch No. 1 Fed. Credit Union v. Kennedy*, 76 Wash.2d 806, 812–13, 459 P.2d 32 (1969). That anticipated future stream of income must be considered in determining Hull's pro-

jected disposable income, barring an applicable exception under Washington law. *See McDonald v. Burgie (In re Burgie)*, 239 B.R. 406, 410–11 (9th Cir. BAP 1999) (an anticipated stream of payments is disposable income, provided that it is not derived from the sale of prepetition property; proceeds from the sale of debtor's residence, owned prepetition, was not disposable income).

### b. Possible Exceptions under Washington Community Property Law

#### (i) Living Separate and Apart

■ The earnings and accumulations of spouses living separate and apart are separate property. RCW 26.16.140. On remand, assuming Hull continues to seek confirmation and if he asserts Linda Hull's income is separate property, the bankruptcy court must determine whether the fact that the Hulls maintained separate living quarters for only part of each year renders this exception inapplicable.

#### (ii) Agreement to the Contrary

There remains the possible impact of the post-petition, (perhaps) post-dismissal, and pre-stay (pending appeal) Agreement, which the bankruptcy judge did not mention in his Letter Opinion.

■ The pre-confirmation execution of the Agreement, purportedly rendering Linda Hull's post-Agreement income separate property, and thus negating Hull's community interest in her future income as a matter of state law, attempts to exclude her post-Agreement income from the calculation. However, in Washington law:

> The separate property agreement will not be given effect to insulate what otherwise would be community property from the community creditor whose basic claim existed at the time of the agreement. It will be effective against the subsequent creditor whether he knew of the agreement or not.

*Cross*, 61 Wash.L.Rev. at 107 (footnotes omitted). As the trustee has the status of

a prepetition creditor, the Agreement, to the extent that Hull had an expectancy in his wife's future income, may be vulnerable to attack as a post-petition or fraudulent transfer. §§ 544(a), 548 and 549; RCW 19.40.041 and .051.

On remand (again, assuming Hull continues to seek confirmation, and if he asserts her income is separate), the bankruptcy court must determine whether the Agreement effectively excepts Linda Hull's income from the community property presumption. In addition, to the extent the Agreement is given effect, its exquisite timing must be considered in the analysis of good faith.

## VI. CONCLUSION

We conclude that the bankruptcy court erred in failing to determine whether Hull had a community property interest in his wife's income and, if so, in excluding that interest from the determination of his projected disposable income. We therefore REVERSE and REMAND for further proceedings.

We do not now decide whether, in the peculiar circumstances of this case, the bankruptcy court could properly confirm the second amended plan, should Hull prevail on all issues, or yet another amended plan (providing, for instance, for a single payment of the appropriate amount).