**In re Pepito E. VILLANUEVA, Debtor.**

**Pepito E. Villanueva, Appellant,**

**v.**

**Edwina E. Dowell, Chapter 13 Trustee, Appellee.**

**BAP No. CC–01–1500–BKMa.**

**Bankruptcy No. LA 01–23088–KM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 24, 2002.

Filed Feb. 26, 2002.

Al Schuchman, Schuchman & Funada, Torrance, CA, for Pepito E. Villanueva.

Before BRANDT, KLEIN, and MARLAR, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

Debtor filed a 60–month chapter 13 [1] plan paying 50% to unsecured creditors. In response to the chapter 13 trustee's objection, debtor surrendered jewelry securing $7,000 that was to have been paid through the plan, and proposed a 36–month plan eliminating payment on that debt and paying 19% to unsecured creditors. At the confirmation hearing debtor argued that, without the secured claim for the jewelry, there was no longer any cause to extend the plan beyond 36 months. As a condition to confirmation, the bankruptcy court required debtor to extend the plan to 60 months. Debtor agreed to entry of the confirmation order, reserving the right to appeal whether the amended 36–month plan met the good faith and best efforts requirements of § 1325. We REVERSE in part and REMAND.

---

**1.** Absent contrary indication, all section and chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

## I. FACTS

Debtor Pepito Villanueva filed a chapter 13 petition and plan on 27 April 2001. His schedules reflected disposable monthly income of $585, and the plan called for payments of $582 monthly for 60 months, paying a 50% dividend to general unsecured claims. The proposed plan would have paid approximately $7,000 in claims secured by jewelry, approximately $11,000 in mortgage arrears, and approximately $25,000 in general unsecured claims.[2] The unsecured claims included the unsecured portion of the jewelry debt. Under the plan, the mortgage arrears were to be paid over 36 months, while three of the four jewelry claims were to be paid over 55 months. The plan recited that the cause to extend the plan period beyond 36 months was that "Debtor requires 60 months to pay all secured claims."

The chapter 13 trustee objected on the grounds that the debtor had not committed all of his disposable income to the plan. Specifically, the trustee objected to payment for jewelry in a plan providing less than 100% payment to general unsecured creditors. In response, Villanueva surrendered the jewelry, amended Schedules D and F accordingly, and filed his second amended plan (having apparently filed a first amended plan in error), proposing payments of $585 monthly for 36 months, with a 19% payout on general unsecured claims.

Neither the trustee nor any unsecured creditor objected to the second amended plan. Villanueva submitted a memorandum in support of confirmation, arguing

that cause no longer existed for the plan to extend to 60 months, and that he had proposed the new plan in good faith. Counsel's remarks at the confirmation hearing indicate the brief he submitted was in response to the court's request. Transcript, 5 September 2001, page 1.

At the hearing, the bankruptcy court refused to confirm the second amended plan unless Villanueva agreed to extend its term to 60 months. The court concluded that, under the circumstances, a 36–month plan did not meet § 1325's best efforts or good faith requirements for confirmation. The parties and the court agreed to the entry of a confirmation order extending the plan term to 60 months but explicitly preserving the issue of whether a 36–month plan would meet the best efforts and good faith requirements. Transcript, pages 10–11. Although the confirmation order does not contain language preserving that issue, it is clear from the record that this was the parties' (and the court's) intent. Villanueva timely appealed.[3] The trustee neither filed a brief in, nor argued, this appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(L) and we do under 28 U.S.C. § 158(c).

## III. ISSUES

1. Whether the bankruptcy court erred in requiring the debtor to extend his plan term from 36 to 60 months as a condition to confirmation;

---

**2.** Villanueva listed jewelry valued at $200 on Schedule B, and jewelry valued at approximately $7,000 on Schedule D. Although the trustee requested that the debtor reconcile this discrepancy, it does not appear he did so. Villanueva's surrender of the jewelry rendered the issue moot.

**3.** Villanueva's premature notice of appeal (filed 28 September 2001) was timely under Rule 8002, which treats a prematurely filed notice of appeal as filed subsequent to and on the same day as the subject order or judgment.

2. Whether the second amended plan meets the best efforts requirement of § 1325(b); and

3. Whether the amended plan meets the good faith requirement of § 1325(a)(3).

## IV. STANDARD OF REVIEW

■ We review chapter 13 plan confirmation issues requiring only statutory interpretation de novo. *Moen v. Hull (In re Hull)*, 251 B.R. 726, 730 (9th Cir. BAP 2000).

■ A determination that a chapter 13 plan has been proposed in good faith is ordinarily a factual finding and reviewed for clear error. *Smyrnos v. Padilla (In re Padilla)*, 213 B.R. 349, 352 (9th Cir. BAP 1997). However, where, as here, the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule, it is a mixed question of law and fact, which we review de novo. *Hull*, 251 B.R. at 730.

## V. DISCUSSION

In the absence of an objection, the bankruptcy court must confirm a chapter 13 plan that meets the criteria set forth in § 1325(a).[4] If the chapter 13 trustee or a general unsecured creditor objects to the plan, the court may not confirm it unless the plan either pays the objecting creditor's claim in full or commits all of the debtor's disposable income to the plan for three years.[5] § 1325(b). This latter requirement is commonly referred to as the "best efforts" test. *See Fid. & Cas. Co. of N.Y. v. Warren (In re Warren)*, 89 B.R. 87, 88 n. 1 (9th Cir. BAP 1988).

At issue here is whether the second amended plan meets the "best efforts" criteria set forth in § 1325(b) and § 1325(a)(3)'s requirement that the plan be proposed in good faith. The bankruptcy court concluded that it failed to meet those requirements because it reduced the term from 60 to 36 months, and the payout on unsecured claims from 50% to 19%.

### A. *Best Efforts*

■ The bankruptcy court concluded that the second amended plan was not the debtor's best effort:

> I don't think it's best efforts to say, "Well, I'm willing to go beyond 36 months to pay what I want to pay but not to pay the, you know, the poor unsecured creditors."

---

**4.** Those requirements are:

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

**5.** Disposable income is defined as "income which is received by the debtor and which is not reasonably necessary to be expended—(A) for the maintenance or support of the debtor or a dependent of the debtor...." § 1325(b)(2).

Transcript, page 7. It is undisputed that Villanueva is devoting all of his disposable income to the plan for 36 months, as the court's comments at the confirmation hearing evidenced:

> THE COURT: All right. So we're using the full surplus. It's a pretty clean issue and the trustee does not believe that any items in the budget are overstated or unnecessary?
>
> MS. DOWELL: No, your honor. Not at all.

Transcript, page 12.

Absent an objection to the second amended plan, § 1325(b) does not apply; even if it did, that section required nothing more: there is no exception in the Code for a debtor who has initially proposed a longer plan term. The controlling issue here is good faith.

### B. *Good Faith*

■ The bankruptcy court has an independent duty to determine that a chapter 13 plan was filed in good faith. *See Warren,* 89 B.R. at 90. As good faith under § 1325(a) is neither defined by the statute nor explained in legislative history, courts in this circuit have adopted a multi-factor, case-by-case approach to the good faith inquiry. *See Goeb v. Heid (In re Goeb),* 675 F.2d 1386, 1390 (9th Cir.1982); *Warren,* 89 B.R. at 92–93. Bankruptcy courts are to consider the totality of the circumstances, the underlying focus being whether the debtor has acted equitably in proposing his plan. *Goeb,* 675 F.2d at 1390. The court should examine the debtor's intentions and the legal effect of confirmation in light of the spirit and purposes of chapter 13. *Warren,* 89 B.R. at 93 (citing *Chinichian v. Campolongo (In re Chinichian),* 784 F.2d 1440, 1444 (9th Cir.1986)).

■ Factors to be considered in determining good faith include, but are not limited to:

1) The amount of the proposed payments and the amounts of the debtor's surplus;

2) The debtor's employment history, ability to earn, and likelihood of future increases in income;

3) The probable or expected duration of the plan;

4) The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

5) The extent of preferential treatment between classes of creditors;

6) The extent to which secured claims are modified;

7) The type of debt sought to be discharged, and whether any such debt is dischargeable in Chapter 7;

8) the existence of special circumstances such as inordinate medical expenses;

9) The frequency with which the debtor has sought relief under the Bankruptcy [Code];

10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) The burden which the plan's administration would place upon the trustee.

*Warren,* 89 B.R. at 93. As there is no argument here about the facts, this is a mixed question, to be reviewed de novo.

■ While there is no substantial repayment requirement in the Ninth Circuit, *Goeb,* 675 F.2d at 1389, the debtor's proposed plan term and percentage payment to unsecured creditors are factors the court may consider in determining good faith.[6] *Warren,* 89 B.R. at 93. Nominal payment by the debtor does not necessarily constitute bad faith. *Id.* at 92.

---

**6.** We note that consideration of plan duration as a good faith factor is not without its critics.

■ Our holding in *Washington Student Loan Guaranty Ass'n v. Porter (In re Porter)*, 102 B.R. 773, 777 (9th Cir. BAP 1989), *aff'd*, 919 F.2d 145, 1990 WL 186109 (9th Cir.1990) (table) supports the conclusion that the proposal of a 36–month plan, standing alone, even where the debtor initially proposed a longer term, does not constitute bad faith. In *Porter*, the debtors proposed a 36–month plan paying secured creditors 100% and unsecured creditors 45–50%. An unsecured creditor objected, arguing that the plan was not proposed in good faith and that the plan term should be extended. We affirmed the bankruptcy court's confirmation of the debtors' plan, noting that they had dedicated all disposable income to the plan, were not enjoying an exorbitant standard of living, and that creditors were to receive more than they would in a chapter 7. *Id.* at 776–77. With respect to plan duration, we observed the Code's preference for three-year plans. *Id.* at 777. Section 1322(d) (then codified as 1322(c)) provides:

> The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

We concluded that, in light of this provision, a creditor could not coerce a debtor into proposing a plan longer than 36 months.

> We believe that the better reasoned view is that the debtors must *voluntarily* choose to extend their plan beyond

three years. This is so because Chapter 13 was designed and enacted as a vehicle for voluntary repayment with future income through composition and/or extension of debts.

*Porter*, 102 B.R. at 777 (citations omitted).

Bankruptcy courts within this circuit have held that increasing payments to unsecured creditors is not sufficient cause to extend the plan term beyond 36 months:

> Unsecured creditors have the right to expect a debtor to commit all his disposable income to the plan for three years and nothing more.... Courts should not use the issue of plan extension to coerce debtors to do something for unsecured creditors that is not required.

*In re Karayan*, 82 B.R. 541, 544 (Bankr. C.D.Cal.1988). *See also In re Greer*, 60 B.R. 547, 555 (Bankr.C.D.Cal.1986).

The bankruptcy court here rejected *Porter* and *Karayan* because neither involved a situation where the debtor had initially proposed a 60–month plan and then reduced the term to 36 months. We find no authority involving similar facts, and our review of this mixed question of law and fact is de novo.

■ Villanueva initially proposed a 60–month plan, asserting as cause that he needed 60 months to pay his secured (and perhaps nondischargeable) debt. Inability to pay secured debt in 36 months may constitute cause for extending a plan. *See In re Norris*, 165 B.R. 515, 517 (Bankr. M.D.Fla.1994). Arguably there is no cause where the extension is to pay se-

---

Judge Lundin has noted:

The good-faith cases that apply duration considerations convert § 1325(a)(3) into a weapon. Creditors force Chapter 13 debtors to extend the plan beyond three years by objecting to confirmation of any plan in which an extension would produce a greater dividend. This turns § 1322(d) on its head. If the plan satisfies the three-year test in § 1325(b), it is the debtor who controls the duration of the plan, and only the debtor can propose a plan that extends beyond three years. As stated by one court, once the Chapter 13 debtor satisfies § 1325(b) by proposing a 36–month plan, "good faith does not require a plan of greater duration."

3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 194.1 (3d ed.2000) (citing *In re Humphrey*, 165 B.R. 508 (Bankr.M.D.Fla.1994)).

cured debt on a luxury item such as jewelry, but that is no longer at issue here. What is certain is that once he had surrendered the jewelry, Villanueva had no motivation to extend the plan term beyond 36 months. His mere ability to do so by paying more does not equal cause, and the bankruptcy court made no finding of cause.

The bankruptcy court concluded that the debtor did not file his second amended plan in good faith because

> it's not good faith to represent that you want to go 60 months just to pay creditors you want to pay but you're not willing to go to 60 months to pay the unsecured creditors because the idea of [chapter] 13 is not just to pay those creditors you want to pay and pay nothing to your unsecureds.

Transcript, page 8. The sole ground for the bankruptcy court's ruling was Villanueva's reduction in plan term and payout.

The second amended plan is not an attempt to discharge an otherwise non-dischargeable debt over the creditor's objection, nor is there here unfair discrimination, dishonesty by the debtor, or an attempt to preserve a lavish lifestyle. In fact, the second amended plan is the result of the debtor's giving up his attempt to retain luxury items. No unsecured creditor objected to its treatment under the second amended plan. Absent the jewelry debt, the plan is essentially a "house saver" composition plan.

Had the second amended plan been proposed initially, it would likely have been confirmed without objection. Villanueva's pre-confirmation amendment shortening his plan is permissible under the Code, *see* § 1323, and is not by itself sufficient to support a finding of lack of good faith.[7]

Reducing the plan term may seem opportunistic, perhaps even unfair, but we cannot conclude the debtor's proposal of his second amended plan was not in good faith. Villanueva's motivation to stay in his plan 60 months understandably evaporated once he no longer had the jewelry he wanted to keep. This was an entirely foreseeable result of the trustee's objection, as was the attendant reduction in payout to unsecured creditors.

## VI. CONCLUSION

On de novo review, we conclude that the second amended plan represents the debtor's best efforts, and that the reduction in plan term and payout does not violate § 1325(a)(3)'s good faith requirement. We REVERSE IN PART and REMAND for entry of an amended confirmation order, reducing the plan term to 36 months.

---

7. We note the appellee chapter 13 trustee neither briefed nor argued this appeal, and thus we have not had the benefit of her in-

sights, or of her views on the policy concerns implicated in this appeal.