**In re Richard Mitri NAHAT, Debtor.**

**No. 400–40284–DML–13.**

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

May 9, 2002.

Behrooz Vida, Venable & Vida, Hurst, TX, for plaintiff.

## MEMORANDUM OPINION AND ORDER

DENNIS MICHAEL LYNN, Bankruptcy Judge.

Before the Court is the Chapter 13 Trustee's Objection to Confirmation (the "Objection") opposing confirmation of debtor Richard Nahat's ("Debtor" or "Mr. Nahat") plan filed on January 31, 2002. The Objection, though articulated under several of the statutory requirements for confirmation of a Chapter 13 plan[1], is grounded on the premise that Debtor fails to pay all of his disposable income into the plan. Hon. Barbara J. Houser conducted a confirmation hearing on a similar prior

plan on September 6, 2001. After hearing Mr. Nahat's testimony, Judge Houser denied confirmation based on insufficient evidence concerning the disposition of income earned by Debtor's wife ("Mrs. Nahat"). Debtor's Second Amended Final Plan (the "Plan") was filed on December 17, 2001. A hearing was held on the Objection on February 14, 2002. Mrs. Nahat testified at that time, and the Court agreed to incorporate into the record the testimony of Mr. Nahat from the prior confirmation hearing. Considering the question of a non-filing spouse's obligation to dedicate separately earned income to a filing spouse's plan to be of some significance, the Court requested that the parties submit briefs on the issues raised by the Chapter 13 Trustee (the "Trustee"), and the matter was taken under advisement.

This memorandum constitutes the Court's findings of fact and conclusions of law. *See* FED. R. BANK. P. 7052 and 9014. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

## I. BACKGROUND

Debtor filed his Chapter 13 petition on January 18, 2000. Mrs. Nahat did not join the petition. Debtor and Mrs. Nahat have been married for more than 20 years and have several children.

Debtor filed his original Schedules I and J on February 1, 2000. Since that initial filing these schedules have been amended four times for various reasons, including to reflect changing income and expenses of the Debtor and Mrs. Nahat. Debtor has held a number of jobs since filing, mostly in the field of automobile sales, where he has developed considerable expertise in

---

1. *See* part IV, *infra.*

floor plan financing. Mrs. Nahat has at all relevant times been employed by American Airlines as a passenger service agent. Her current gross monthly salary is $3,718.00.

Debtor's Schedule I as it presently exists shows payroll deductions for Mrs. Nahat as follows:

| | |
|---|---|
| Pre Tax Deductions | $100 |
| Signature Loan | $736 |
| Supp. Med. LT Disb., Ch Life | $ 56 |
| Prefund Charity, NRSA | $ 38 |
| 401K Loan | $435 |

Additionally, Mrs. Nahat makes credit card payments of approximately $200.00 per month on cards she maintains in her own name. After providing for these payments, Mrs. Nahat's remaining income is included in the Plan, which is structured to satisfy claims secured by property used by the Nahat family.

Debtor has also amended his Chapter 13 plan on three occasions, changing the dividend to unsecured creditors from 100% to 0%. The Trustee objects to the current version of the Plan because Mrs. Nahat's creditors, particularly the credit union owed the signature loan and her 401K plan, are receiving preferential treatment to Debtor's creditors. Debtor did not personally incur the liabilities in question, though Mrs. Nahat borrowed from her 401K plan and the credit union for community purposes. Debtor's unsecured debts covered by the Plan were principally based on credit cards issued only in his name. The record does not reflect the purposes of the unpaid credit card charges, and the Court therefore cannot determine if Mrs. Nahat could be held liable to the card issuers.

## II. STATEMENT OF THE ISSUE

The question presented by the Objection is whether the Court should require that Mr. and Mrs. Nahat's income be pooled and their creditors treated similarly notwithstanding the fact that Mrs. Nahat has not filed for Chapter 13 protection.

## III. POSITIONS OF THE PARTIES

The Trustee maintains that Mrs. Nahat's income should be included in full in the Plan. The debts Mrs. Nahat is paying are community debts that should be paid under the Plan. The Trustee argues that the Plan therefore fails to meet several tests for confirmation (*see* 11 U.S.C. §§ 1322 and 1325). According to the Trustee, the result of allowing Mrs. Nahat to pay debts she personally incurred before dedicating the balance of her income to the Plan is unfair and inequitable.

Debtor, on the other hand, claims that Mrs. Nahat, as a non-debtor spouse, remains outside of the bankruptcy and is entitled to pay debts incurred on her credit. Remaining income of Mrs. Nahat is included in the Plan, and all obligations created by Mr. Nahat are treated equally. If Mr. Nahat's creditors have rights against Mrs. Nahat, they will not lose them through confirmation and consummation of the Plan.

## IV. DISCUSSION

At first blush, the Court's task would appear an easy one. The issue before it has been addressed by other bankruptcy courts and several commentators. However, a split in authority exists regarding whether a non-debtor spouse's income should be considered in the debtor spouse's Chapter 13 bankruptcy.

The majority of cases require inclusion of the non-debtor spouse's income. *See* Robert B. Chapman, *Coverture and Cooperation: the Firm, the Market, and the*

*Substantive Consolidation of Married Debtors*, 17 BANKR.DEV. J. 105, 117 (2000). The reasoning underlying this view varies depending on the court. In some cases, the courts see the inclusion as a requirement of the Bankruptcy Code.[2] *See White v. United States Dep't of Educ. (In re White)*, 243 B.R. 498, 510–11 (Bankr. N.D.Ala.1999); *In re Cardillo*, 170 B.R. 490, 492 (Bankr.D.N.H.1994); *In re Rothman*, 204 B.R. 143, 159 (Bankr.E.D.Pa. 1996); *Cleveland v. Cleveland (In re Cleveland)*, 198 B.R. 394, 398–99 (Bankr. N.D.Ga.1996); *In re Albert*, 25 B.R. 98, 101 (Bankr.N.D.Ohio 1982).

Some of these cases (*White* and *Albert*) address the issue in terms of whether the debtor is entitled to a hardship discharge of a student loan. These cases are inapposite to that before the Court.[3] Other cases see the requirement that the disposable income of the debtor be dedicated to payment of creditors as a reason to include the non-debtor spouse's income in the plan under § 1325. These courts do not offer an explanation for how they reach this conclusion.

A minority of cases conclude that the court should not consider a non-debtor spouse's income in assessing confirmability of a chapter 13 plan. *See In re Harmon*, 118 B.R. 68, 69 (Bankr.E.D.Mich.1990). *Compare, In re Whitus*, 240 B.R. 705 (Bankr.W.D.Tex.1999) (wife not required to provide for IRS claim in her chapter 13 plan where liability was incurred by non-

debtor husband); *see also*, 8 COLLIER ON BANKRUPTCY & 1325.08[4][a] (15th ed. rev. 2002).

The Court believes the key to proper resolution of the issue in this case must be sought in the language of the Bankruptcy Code and in applicable Texas law. On these facts, where Mrs. Nahat's income is being dedicated to repayment of the debts that she incurred in her own name (even though for the community) and thereafter to augmenting disposable income used to satisfy creditors pursuant to the Plan, the question is whether the Trustee may force Mrs. Nahat to re-prioritize the debts she pays. This turns on whether Mrs. Nahat's earnings come within the scope of the bankruptcy case.

In his brief the Trustee argues that a failure to consider Mrs. Nahat's earnings and debts on a parity with Debtor's violates several requirements for confirmation of a chapter 13 plan. The Trustee specifically asserts that the plan fails to meet the best interest test articulated by 11 U.S.C. § 1325(a)(4) (that the plan provides a return to each unsecured creditor at least equal to what would be received in liquidation); that the plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3); that the plan discriminates unfairly among creditors contrary to 11 U.S.C. § 1322(a)(3) (which requires that each claim within a class be treated the same); and that the plan does not "provide[ ] that all of the debtor's disposable

---

**2.** Other cases turn on state law respecting the rights of a debtor and his or her creditors to the spouse's income. *See, e.g., Moen v. Hull (In re Hull)*, 251 B.R. 726 (9th Cir. BAP 2000).

**3.** The student loan cases rest on the notion that under the undue hardship standard, a non-debtor spouse's income should be considered in determining whether the debtor is in such grave economic circumstances that a student loan should be discharged. *See In re*

*Albert*, 25 B.R. at 101; *In re White*, 243 B.R. at 509–10. A similar situation exists in a divorce context, where a debtor seeks discharge of obligations to an ex-spouse. *See Cleveland v. Cleveland (In re Cleveland)*, 198 B.R. at 398–99. In these situations, it is not inappropriate for a court to consider what support a debtor might receive from a spouse in determining whether the debtor is in such dire straits that relief is warranted.

income to be received in the three-year period beginning on the date ... the first payment is due ... will be used to make payments under the plan."[4] Finally, during oral argument the Trustee urged that the plan was inequitable, that it was not right for obligations incurred by Mrs. Nahat to be paid in full in preference to the creditors whose claims were to be discharged through the Plan. The Trustee also asserts that the plan is not feasible (i.e., the debtor will not be able to perform the plan (11 U.S.C. § 1325(a)(6)), but the Court does not consider the question of Mrs. Nahat's earnings as the basis for this objection).

### A. The Statute

■ The Court's analysis must begin with what property of a debtor becomes subject to disposition for the benefit of creditors in a bankruptcy case pursuant to the Bankruptcy Code. The starting point for such a determination is the bankruptcy estate created by 11 U.S.C. § 541. Congress has defined the estate to include, *inter alia*, "[a]ll interests of the debtor and the debtor's spouse in community property *as of the commencement of the case*, that is—(A) under the sole, equal or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor ..., to the extent such interest is so liable." *See* 11 U.S.C. § 541(a)(2)(emphasis added).

Since Mrs. Nahat's current earnings were not held as of the commencement of the case, they are not "property of the estate" unless some other section of the Bankruptcy Code applies to bring them within the estate. Mrs. Nahat's earnings are not covered by any part of section § 541 that augments the estate after commencement of the case. Clearly they are beyond the scope of section 541(a)(6). Section 541(a)(5), which brings into the estate certain property acquired by the debtor within 180 days after the commencement of the case, would seem by implication to exclude Mrs. Nahat's post petition earnings from the estate, since § 541(a)(5)(B) specifically deals with property received from the debtor's spouse. Congress, by limiting this section to property received in a divorce settlement, would seem to have strictly circumscribed what property of a debtor's spouse is available to satisfy that debtor's creditors to what is included in 11 U.S.C. § 541(a)(2) and § 541(a)(5).

In chapter 13, however, the estate includes "property that the *debtor* acquires after the commencement of the case ..." and "earnings from services performed by the *debtor* after the commencement of the case ..." *See* 11 U.S.C. § 1306(a) (emphasis added).[5] "Debtor" is defined in 11 U.S.C. § 101(13) as a "person ... concerning which a case under this title has been commenced." Mrs. Nahat has not commenced a case under Title 11 and therefore is not a debtor. It is clear not only from provisions such as 11 U.S.C. § 541(a)(2) but also from 11 U.S.C. § 302 (permitting, but not requiring, a joint filing by an individual and his or her spouse) that Congress contemplated that an individual might file a bankruptcy petition while his or her spouse did not.

---

**4.** *See* 11 U.S.C. § 1325(b)(1)(B). This requirement only applies if an unsecured creditor or the Trustee (as in this case) objects to confirmation.

**5.** This is because Chapter 13 substitutes rehabilitative relief for liquidation. In Chapter 13 the debtor proposes a plan for confirmation. If it is confirmed, the obligations provided for in the plan (as opposed to prepetition claims) must be satisfied by the debtor under court supervision.

■ It follows that Congress expected in such a case that the non-filing spouse would share in the burden of being a debtor under Title 11 only to the extent specified in the Bankruptcy Code (e.g., 11 U.S.C. § 541(a)(2)). It is axiomatic to statutory construction that inclusion of an entity in an obligation created in one section of a statute means it cannot be considered burdened by a section where it is not included. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994).

■ Necessarily, therefore, the failure to include Mrs. Nahat's earnings and debts incurred by her in the Plan cannot lead to a failure to meet the best interest of creditors test of 11 U.S.C. § 1325(a)(4). Likewise, because Mrs. Nahat will receive no discharge of debt by reason of her husband's chapter 13 case [6], it stands to reason that Mrs. Nahat should have the right to pay obligations in her name before contributing to the disposable income under the Plan.[7] Thus, the Plan does not discriminate unfairly among unsecured creditors.[8]

■ As to the Trustee's complaint that the Plan does not deal with disposable income as required by 11 U.S.C. § 1325(b)(1)(B), that provision again refers to "*debtor's* projected disposable income." (emphasis added).[9] Mrs. Nahat is not a debtor in this case, and § 1325(b)(1)(B) does not apply to her earnings.[10] That being so, confirmation of the Plan is not subject to denial because it fails to provide for payment to creditors of the Debtor's requisite disposable income.

6. 11 U.S.C. § 1328(a) limits the discharge granted upon performance of the plan to the *debtor*. While 11 U.S.C. § 524(a)(3) protects community property acquired after the commencement of the case from a community claim, insulating such property from a community claim discharged as to the debtor but asserted through a debtor's non-filing spouse, the non-filing spouse remains liable for the claim. *See* 11 U.S.C. §§ 524(a)(2) and 524(e).

7. Though Debtor arguably should have scheduled some of the debts Mrs. Nahat is paying and provided for them in the Plan, his failure to do so has no significance where Mrs. Nahat is paying them, and the Plan, in any event, provides nothing for unsecured creditors. The only consequence of excluding the debts from the Plan is that Debtor may not be discharged as to any liability he has for them. Though 11 U.S.C. § 1328(a) purports to discharge debts to creditors without notice, it is questionable whether that effect would be consistent with the Constitution's requirement of due process of law. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir.1984); *Cody v. Cody (In re Cody)*, 246 B.R. 597, 600 (Bankr.E.D.Ark. 1999).

8. The Trustee's discrimination argument is actually backwards: neither the Debtor nor the Plan discriminates among unsecured creditors. It is Mrs. Nahat who has elected to discriminate. If she is liable for debts included in the Plan, she will remain so and suffer the consequences. As pointed out, *supra, n.* 5, the Plan will substitute a new set of obligations for pre-petition claims against Mr. Nahat. *See In re Szostek*, 886 F.2d 1405, 1409 (3d Cir.1989); *In re Pence*, 905 F.2d 1107, 1110 (7th Cir.1990); *Pennsylvania v. Flick (In re Flick)*, 14 B.R. 912, 918 (Bankr. E.D.Pa.1981). The Trustee's reasoning appears to ignore the distinction between obligations for prepetition debt and Mr. Nahat's undertaking to fund the Plan.

9. For purposes of section 1325(b), subsection 2 defines disposable income as income "received by the debtor." The only income earned by Mrs. Nahat that is received by Debtor is that contributed of the Plan. In fact, since the signature loan and 401K loan payments are deducted directly from Mrs. Nahat's pay, before a check is issued to her, it is difficult to see how those amounts even arguably could be "received by the debtor."

10. State law may, however, change this conclusion. *See Moen v. Hull (In re Hull)*, 251 B.R. at 732–33.

■ The Court has found no evidence of bad faith in connection with the proposal of Debtor's plan. The fact that Mrs. Nahat could have filed with her husband and provided a better return on claims dealt with by Debtor's plan—and, necessarily, a worse return on debts she incurred on her own credit—does not amount to bad faith. On the contrary, as discussed, *infra*, to so hold would effectively force a debtor's spouse into chapter 13, a result inconsistent with public policy.[11] The Court assumes that the Trustee's equitable argument runs to bad faith. While it is questionable whether, in this circuit, the good faith requirement for confirmation has such a broad reach[12], as discussed in the Conclusion, part V, *infra*, the Court can envision cases where the failure to dedicate a non-filing spouse's excess income to performance of a plan might amount to abuse of the Bankruptcy Code and so be grounds for dismissal.[13]

■ The Court finally finds Debtor's plan feasible. The testimony of Mr. Nahat that he could make the payments required by the Plan[14] was uncontradicted.

In sum, there is no basis in chapter 13 or the Bankruptcy Code in general for denying confirmation of Debtor's plan. On the contrary, the statute appears to have been written with the view that a non-filing spouse would not be affected by the chapter 13 case of that spouse's husband or wife, except to the extent specified in the Code or required by local law.

## B. Policy

There are strong policy reasons for concluding that this was the intention of Congress. The most obvious is Congress' concern that chapter 13 (unlike chapter 11 or chapter 7) not be commenced involuntarily. *See* 11 U.S.C. § 303(a). This concern is in turn derived from the prohibition against involuntary servitude of the 13th Amendment to the Constitution. *See* H. REP. No. 95–595 at 321–324 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6277–6281. Congress even limited the term of years permissible for chapter 13 plans to protect a debtor from being effectively indentured through a plan for the benefit of his or her creditors. *See id.; see also* 8 COLLIER ON BANKRUPTCY ¶ 1322.17[1] (15th ed. rev. 2002).

■ If a chapter 13 case cannot be commenced involuntarily, it follows that it is contrary to public policy to force a debtor's spouse to participate on equal terms with the debtor in a plan. To impose upon Mrs. Nahat the obligations urged by the Trustee would result in less than full and timely payment of the debts she has incurred. This would leave her with the unpalatable choice of filing for relief herself or suffering the disadvantages of chapter 13 without receiving the reward of a discharge. As a practical matter this would mean the Trustee could force Mrs. Nahat into chapter 13: something Congress surely did not intend.[15]

---

**11.** To the extent Mrs. Nahat is liable to Debtor's creditors, she will remain so, absent a filing herself.

**12.** *See In re Sun Country Dev., Inc.,* 764 F.2d 406, 408 (5th Cir.1985).

**13.** *See In re Thomas,* 123 B.R. 552 (Bankr. W.D.Tex.1991); *In re Chaffin,* 836 F.2d 215, 216–17 (5th Cir.1988).

**14.** Though Mr. Nahat's testimony was in support of the plan denied confirmation by Judge

Houser, the Court deems it sufficient to meet the requirement of 11 U.S.C. § 1325(a)(6). There is no significant difference between the Plan and that considered by Judge Houser.

**15.** As discussed, *supra*, Congress intended chapter 13 to be available to an individual absent the joinder of his or spouse.

The operation of the discharge scheme of the Bankruptcy Code reinforces this conclusion. A non-filing spouse is not relieved of any liability. In this case, at oral argument, the Trustee expressed concern that Debtor's creditors—largely credit card issuers—would lack the sophistication to realize they might have rights against Mrs. Nahat. While the Court questions the Trustee's assumption that credit card issuers are unsophisticated concerning their rights against consumer debtors, this Court's decision cannot be premised on whether creditors understand their non-bankruptcy options.

The Bankruptcy Code is a complex statute. Its operation sometimes results in apparent injustices. In chapter 11 cases, for example, a creditor may, through a plan, inadvertently lose rights against a co-debtor by application of the doctrine of *res judicata*. *See, e.g., Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987) (*but see* FED. R. BANKR.P. 3017(f), added in 2001). Creditors may be time-barred as to their claims and so forfeit rights against a debtor based on publication notice. *See* FED. R. BANKR.P. 2002(i) and 3003(c)(3). A tort victim of a chapter 11 debtor for example, may, through publication notice, lose any rights against the debtor regardless of his or her sophistication. *See In re Best Products Co.,* 140 B.R. 353 (Bankr. S.D.N.Y.1992). Certainly the possibility that community creditors of a chapter 13 debtor may overlook their ability to make claims against a non-filing spouse does not amount to a public policy concern that would outweigh the bar against involuntary chapter 13 cases.

### C. State Law

▮ Unless state law somehow requires inclusion of Mrs. Nahat's income in "disposable income", which must be available to satisfy the obligations Debtor assumes under the Plan, the result is therefore obvious: the Plan *is* confirmable. In this case Texas law governs the relationship between Mr. and Mrs. Nahat and sets the rules regarding their sharing of property. It also affects whether Mrs. Nahat's income should be included in the Plan, since property rights of a filing debtor, that is, property includible in the estate, are determinable by non-bankruptcy, typically state, law. *See* 5 COLLIER ON BANKRUPTCY ¶ 541.13 (15th ed. rev.2002); *see also Anderson v. Conine (In re Robertson),* 203 F.3d 855, 859 (5th Cir.2000).

▮ Under TEX. FAM.CODE § 3.102(a)(1) (Vernon 2001), the personal earnings of either husband or wife are community property. *See also Sterrett v. Sterrett,* 228 S.W.2d 341 (Tex.Civ.App.—Fort Worth, 1950). During marriage, however, each spouse has sole management, control and disposition of his or her personal earnings. *See* TEX. FAM.CODE § 3.102(a)(1). Such property, although community property, is deemed to be *special* community property. *See Moss v. Gibbs,* 370 S.W.2d 452 (Tex.1963). Special community property is under one spouse's exclusive control and is not available to satisfy the other spouse's debts. *See id; see also* TEX. FAM.CODE § 3.202(b)(2) (providing that community property subject to a spouse's sole management, control or disposition is not subject to any non-tortious liabilities the other spouse incurs during the marriage). Here, Mrs. Nahat's personal income is special community property that is not available to satisfy Debtor's liabilities. The obligation of Mr. Nahat to make payments under the Plan is his alone. The requirement to make payments under the Plan thus is a non-tortious liability incurred by Mr. Nahat dur-

ing his marriage.[16]

 It is clear that any property that was community property of Mrs. Nahat at the beginning of the Debtor's case became property of the estate. It is also clear under § 541(a)(2) and Texas law that Mrs. Nahat's special community property was part of the estate, but only at the commencement of the case. With respect to post-petition earnings, 11 U.S.C. § 1306 and the Texas Family Code make it clear that only the post-petition earnings of the *debtor* are included in the estate and subject to inclusion in the Plan as a requirement of confirmation. Under Texas law, unlike that of some other community property jurisdictions,[17] Mrs. Nahat's earnings are hers to dispose of. They do not become property of the estate.

### V. CONCLUSION

In conclusion, the Court holds that the Trustee's objection to confirmation shall be overruled and Debtor's plan confirmed. In so ruling the Court is mindful that situations may exist requiring a different result. In this case Mrs. Nahat's income is dedicated to paying creditors. To the extent there is a surplus after payment of obligations incurred by her, it is devoted to necessities and satisfaction of the terms of the Plan. Were that surplus being used to underwrite luxuries to be enjoyed by the Debtor and Mrs. Nahat, while the Debtor used chapter 13 for lien stripping, extensions of indebtedness and discharge of unsecured claims, there might exist grounds for dismissal of the case or denial of confirmation on the basis that the chapter 13 filing was in bad faith. On the facts of this case, the Court cannot so rule.

It is therefore

ORDERED that the Objection be overruled and it is further

ORDERED that within 14 days the Trustee submit an order confirming the Plan.

---

**16.** As stated at 8 Collier on Bankruptcy ¶ 1327.02[1] (15th ed.rev.2002), "Upon becoming final, the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan."

**17.** *See Moen v. Hull (In re Hull),* 251 B.R. 726.