In re Juanita COPELAND, Debtor.

In re Darwin Copeland, Debtor.

Nos. 00–22344–7, 00–23051–13.

United States Bankruptcy Court, D. Kansas.

June 14, 2001.

Thomas E. Osborn, Kansas City, KS, for Brotherhood Bank & Trust Co.

William H Griffin, Topeka, KS, Standing Chapter 13 Trustee, pro se.

James Holmberg, Shawnee, KS, pro se.

## MEMORANDUM AND ORDER

JOHN T. FLANNAGAN, Bankruptcy Judge.

Brotherhood Bank & Trust Company foreclosed its mortgage on the residence of debtor Juanita Copeland and her husband, Darwin Copeland, in January 2000. On the day before the foreclosure sale, Juanita Copeland, acting through her attorney, James M. Holmberg, filed an individual Chapter 13 petition, automatically staying the sale under § 362. When her petition was dismissed, Juanita Copeland filed a second petition, stopping a second sale. When this petition was dismissed, Juanita's husband, Darwin, filed his individual petition, stopping a third sale. Have the Copelands and James M. Holmberg abused the bankruptcy process, and if so, should sanctions be imposed? The court rules that they did abuse the process and that, indeed, sanctions should be imposed.

This situation first came to the court's attention with the presentation of Brotherhood Bank & Trust Company's stay relief motion in Darwin Copeland's Chapter 13 case (No. 00–23051–13). The motion was set for hearing on December 28, 2000. Brotherhood Bank & Trust Company appeared at the hearing by its counsel, Thomas E. Osborn. The Standing Chapter 13 Trustee, William H. Griffin, appeared *pro se.* Darwin Copeland, the *pro se* debtor, failed to appear. There were no other appearances.

At the hearing, the court granted Brotherhood Bank's motion for stay relief, accepting as true Mr. Osborn's claim that Darwin Copeland had filed the petition solely to stop a state court foreclosure sale scheduled for December 14, 2000. Since it was apparent that Darwin Copeland's case filing was the third use of the bankruptcy stay to prevent a foreclosure sale, the court undertook a review of Darwin's case and the two cases previously filed by Juanita Copeland.

As a result of the review, the court, acting on its own initiative under Fed. R. Bankr.P. 9011(c)(1)(B), ordered Darwin Copeland, Juanita Copeland, and James Holmberg to show cause why sanctions should not be imposed upon them. The order was issued on February 28, 2001, in both cases.[1] It described the conduct that appeared to violate Rule 9011(b)(2), as required by Rule 9011(c)(1)(B). And it directed Darwin Copeland, Juanita Copeland, and James M. Holmberg to appear on March 23, 2001, for an evidentiary hearing to show cause why they had not violated Rule 9011(b) by their conduct and why sanctions should not be imposed against them under Rule 9011(c) and the powers of the court set out in 11 U.S.C. § 105. In the February 28 order, the court made substantially the following findings:

### Findings Recited in the Show Cause Order

### The State Court Foreclosure

In January 2000, Brotherhood Bank & Trust filed a petition for mortgage foreclosure in the District Court of Johnson County, Kansas, against Darwin and Juanita Copeland, husband and wife. Both defendants were personally served with summons, but neither answered or otherwise pleaded to the petition. Consequently, the state court granted Brotherhood Bank default judgment. And the Bank published notice of a foreclosure sale scheduled for May 31, 2000.

---

1. Doc. # 41 in Juanita's case, No. 00–22344; doc. # 16 in Darwin's case, No. 00–23051.

## The First Foreclosure Stay

On May 30, the day before the scheduled sale, Juanita Copeland, acting through her attorney, James M. Holmberg, filed an individual Chapter 13 petition in this court. The case was assigned number 00–21259–13. The filing activated the automatic stay, thereby stopping the foreclosure sale scheduled for May 31, 2000.

In due course, the Bankruptcy Clerk issued the notice of bankruptcy filing, which scheduled the first meeting of creditors for June 30, 2000. But, neither Juanita Copeland nor her attorney, James Holmberg, appeared at that meeting. The trustee therefore continued the meeting to July 19, 2000, and filed a motion to dismiss the case.

When Juanita Copeland appeared at the meeting on July 19, 2000, the trustee asked her to provide him with information about agricultural land she had claimed in her schedules as an exempt homestead. When she failed timely to provide him with the information, the trustee filed, on August 14, an amended motion to dismiss the case. Ultimately, Juanita Copeland did furnish the information, but the case was dismissed nevertheless because she gave the trustee a check drawn on a closed account.

## The Second Foreclosure Stay

After the dismissal of Juanita Copeland's first case, Brotherhood Bank published a second notice of foreclosure sale scheduled for October 5, 2000. But, on September 22, Juanita Copeland, through James Holmberg, filed her second Chapter 13 petition. The second petition was assigned number 00–22344–13. This filing, of course, stayed the Bank's state court foreclosure sale scheduled for October 5, 2000. Again, the Bankruptcy Clerk issued

the notice of bankruptcy filing, this time setting the Chapter 13 meeting of creditors for October 25, 2000. Again, neither Juanita Copeland nor her attorney appeared for that meeting, so the trustee continued the meeting to November 8.

On October 12, at the trustee's request, the court ordered Juanita Copeland to deliver to the trustee past due payments within two weeks. Receiving no payments under that order, the trustee filed a motion on November 6 to convert the case to Chapter 7 for Juanita Copeland's display of bad faith.

Thwarted in its effort to complete the foreclosure sale, Brotherhood Bank filed a motion for stay relief (or in the alternative, for dismissal) in the second Chapter 13 case and set the motion for hearing on November 14, 2000. In her response to the motion (signed by her attorney), Juanita Copeland stated that she would bring all postpetition mortgage payments current "prior to the hearing on this motion currently set for November 15, 2000 [sic]," [2] and that she would agree to a drop-dead order lifting the stay if she became more than ten days delinquent on any future payment.

When Brotherhood Bank's motion came before the court on November 14, James Holmberg appeared for Juanita Copeland, but she was absent. Thomas E. Osborn appeared for Brotherhood Bank & Trust Company. William H. Griffin appeared as Standing Chapter 13 Trustee.

Mr. Osborn informed the court of Juanita Copeland's promise to bring the postpetition mortgage payments current by the date of the hearing and advised that she had failed to do so. Consequently, according to Mr. Osborn, the Bank had received

---

2. Doc. # 13 in Case No. 00–22344.

no payments on its claim since October 1999.

Mr. Holmberg supported Mr. Osborn's statement concerning Juanita Copeland's promise and default. He explained that Juanita Copeland had informed him that a check had been delivered to the Bank that very day, but when he checked on her story, he learned that although she had sent a check, it would not be honored by the drawee, Interstate Federal.

Mr. Osborn then informed the court that two foreclosure sales had been interrupted by Juanita Copeland's Chapter 13 filings and asked that the Bank be granted stay relief so that it could proceed with a third foreclosure sale attempt. He also suggested that if the court were inclined to dismiss the case, it should apply § 109(g) to prevent Juanita Copeland from refiling before the sale could be completed.

Next, Mr. Griffin, the standing trustee, outlined his previous difficulties with Juanita Copeland in Case Number 00–21259, which he advised had been dismissed because she had given him a check drawn on a closed account, and he noted her failure to appear at the Chapter 13 first meetings of creditors in the two cases.

Most importantly, Mr. Griffin observed that since Darwin Copeland was a co-debtor on the mortgage loan, he might be expected to file his own bankruptcy to stop a third sale if the court were to grant stay relief to permit the foreclosure sale.

Being aware that Darwin Copeland was free to file another case, the court granted the Bank's motion for stay relief but ruled that Juanita Copeland's case, No. 00–22344, should remain pending so that she, at least, could not file another case to stop the next scheduled foreclosure sale.

The court then warned counsel that any new filing by Darwin Copeland would cause the court to review the circumstances:

> THE COURT: Well, I'm going to sustain the motion for stay relief. Leave this case pending. See what happens next. I don't know that there's anything we can do to prevent him from filing another case. But when that happens, we'll look at the total picture and maybe there will be something to do.[3]

Responding to the ruling, Mr. Holmberg stated:

> Your Honor, just to clarify, the reason I didn't file a joint in this case isn't in anticipation of filing for Mr. Copeland. The unsecured debt in Ms. Copeland's case is solely her debt. The only debt that Mr. Copeland has is the debt to Brotherhood Bank. I wasn't trying to, thinking ahead that, you know, I'll come back and file again for Mr. Copeland.[4]

**The Third Foreclosure Stay**

In due course, Mr. Osborn published notice of a third foreclosure sale set for December 14. As predicted, on December 13, the day before the sale, acting *pro se,* Darwin Copeland filed (without schedules) his individual Chapter 13 petition, No. 00–23051–13, thereby stopping the mortgage foreclosure sale scheduled for December 14, 2000.

**The Show Cause Hearing**

At the evidentiary hearing to show cause on March 23, 2001, Thomas E. Osborn appeared for Brotherhood Bank, William Griffin appeared as Standing Chapter 13 Trustee, and James Holmberg appeared personally. Neither Juanita Copeland nor Darwin Copeland appeared.

**3.** Transcript of Proceedings held November 14, 2000, filed January 8, 2001, at 6–7.

**4.** Transcript of Proceedings held November 14, 2000, filed January 8, 2001, at 7.

Mr. Holmberg announced that he had received a telephone voice mail message advising him that both of the Copelands were in the hospital and would therefore not appear at the hearing. The court directed the hearing to proceed without the Copelands.

Mr. Holmberg did not take issue with the findings set out in the Order to Show Cause nor did he present any evidence beyond his statements as an officer of the court, which disclaimed any wrongdoing on his part.

Mr. Osborn advised the court that each of the foreclosure sale notices had cost the Bank approximately $300.00 each. And he stressed his opinion that the filings were intended to stop the sales.

Mr. Griffin also outlined further some of the difficulties he had had with the Copelands.

### Attorney's Fees and Costs

At the court's request, Mr. Osborn submitted an itemized statement of attorney's fees and expenses for the three cases: No. 00–23051–13, No. 00–22344–13, and No. 00–21259–13. According to his statement, Brotherhood Bank & Trust Company incurred attorney's fees totaling $3,692.00 (28.40 hours at the rate of $130.00 per hour) and expenses of $75.00.

At the court's further request, Mr. Osborn also provided an affidavit showing the publication costs incurred by the Bank for the notices in the state court foreclosure proceeding: [5]

| | | |
|---|---|---|
| 5/10/00 | Legal Record | $339.80 |
| 9/13/00 | Legal Record | 335.87 |
| 11/22/00 | Legal Record | 354.14 |
| 1/16/01 | Legal Record | 354.14 |

These publication costs total $1,383.95. The last publication resulted in a sale that was confirmed by the state court on February 9, 2001.

5. Doc. # 19 in Darwin Copeland's Case, No. 00–23051.

The court finds that these fees and expenses are reasonable and that they were incurred for actual, necessary services performed by Thomas E. Osborn on behalf of Brotherhood Bank & Trust Company while attempting to proceed with foreclosure sales.

### Conclusions

#### The First Case

The conduct of Juanita Copeland and James Holmberg in Juanita's first case does not evidence an intent on the part of either to comply with the rules and procedures of Chapter 13 or to complete a plan of debt adjustment.

The day before the first scheduled foreclosure sale, James Holmberg filed Juanita Copeland's first Chapter 13 petition accompanied only by a mailing matrix. This deficiency caused the Bankruptcy Clerk to issue an order calling for the missing documents, which Copeland eventually filed.

Both Juanita Copeland and James Holmberg failed to attend the mandatory § 341 first meeting of creditors, requiring the trustee to reschedule the meeting. Although Juanita Copeland did attend the rescheduled meeting, she failed to make a timely response to the trustee's request for information dealing with agricultural land that she had listed in her delinquent schedules. Furthermore, she gave the trustee a worthless check written on a closed account. And she made no payments on the mortgage debt.

In the case of Juanita Copeland, her conduct raises an inference that she had no intent to complete a debt adjustment plan but rather that her sole motivation was to halt the Bank's foreclosure sale. As to James Holmberg's conduct in the first case, he was entitled to participate if

he believed that his client was filing with the good faith intention of completing a debt adjustment plan.

**The Second Case**

But James Holmberg's participation in the second case implicates him with his client in her effort to stop a scheduled sale rather than to adjust her debts under Chapter 13.

After Juanita Copeland's first case was dismissed, James Holmberg refiled a second Chapter 13 petition for her that stopped the Bank's second scheduled foreclosure sale. Again, both Mr. Holmberg and Mrs. Copeland failed to appear at the first meeting of creditors scheduled by the filing notice. When the Bank filed a motion for stay relief in this case, Juanita Copeland promised in her response to the motion that she would become current on the mortgage payments by the date of the hearing, but she failed to do so. And she ignored the court's order to pay the trustee within two weeks. If her attorney can be believed, she also misrepresented to him by stating that she had made a payment the day before the hearing. Although a check was delivered, it was not collectable. This conduct evidences the intent of both to stop Brotherhood Bank's foreclosure sale rather than to complete a plan of debt adjustment under Chapter 13.

**The Third Case**

Finally, Darwin Copeland's conduct in the third case illuminates the Copelands' intentions in all of their cases and supports the inference that the primary motive of both the Copelands from the outset was to stop the Bank's foreclosure sales by filing Chapter 13 petitions.

When the Bank obtained stay relief in Juanita's second case and rescheduled the third foreclosure sale, Darwin Copeland filed a *pro se* Chapter 13 petition the day before the sale to activate the automatic stay and stop the sale. He filed no schedules, only a petition and mailing matrix showing one creditor—Brotherhood Bank & Trust Company. Darwin Copeland then failed to appear at the December 28 hearing on the Bank's final stay relief motion.

## 11 U.S.C. § 105

Although the court has followed the sanctioning procedures of Fed. R. Bankr.P. 9011, the power to sanction in this case stems from the Bankruptcy Code itself.[6] Section 105(a) grants the court the authority to act on its own motion to prevent abuse of the bankruptcy process:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

**Copeland Sanctions**

 The court finds that the Copelands' multiple bankruptcy filings on the eve of foreclosure sales constitute an abuse of the bankruptcy system warranting imposition of sanctions. Although given notice and an opportunity for hearing, Darwin Copeland and Juanita Copeland have failed to show cause why sanctions should not be entered against them for the serial filing of bankruptcy petitions that impeded Brotherhood Bank's foreclosure sales. The court therefore orders that Darwin

---

6. *See Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.)*, 40 F.3d 1084 (10th Cir.1994); *Geraci v. Bryson (In re Bryson)*, 131 F.3d 601 (7th Cir.1997); *Matter of Volpert*, 110 F.3d 494 (7th Cir.1997).

Copeland and Juanita Copeland pay to Brotherhood Bank & Trust Company (1) $3,692.00 as reimbursement for attorney's fees; (2) $1,383.95 as reimbursement of publication costs; and (3) $75.00 as reimbursement of expenses, for a total sanction award of $5,150.95. This sanction award is imposed as a joint and several liability of Darwin Copeland and Juanita Copeland.

**Holmberg Sanctions**

The court further finds that James Holmberg has failed to show cause why his conduct in filing and participating in Juanita Copeland's second Chapter 13 filing does not constitute an abuse of the bankruptcy process. Consequently, the court orders that James Holmberg pay a monetary sanction of $300.00 to the Clerk of the Kansas City Division of the United States Bankruptcy Court for the District of Kansas forthwith.

IT IS SO ORDERED.